**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Joanne E. Horen, etc., et al.,                  Case No. 3:11CV1110

        Plaintiff

    v.                                           **ORDER**

Judge Stacy Cook,

        Defendant

This is a Family and Medical Leave Act (FMLA) case in which plaintiff, Joanne E. Horen, claims defendant, Judge Stacy Cook, terminated her employment because Horen exercised her right to take FMLA leave to care for her child.[1]

Pending is Judge Cook's motion for summary judgment (Doc. 47). For the reasons that follow, I grant the motion.

Jurisdiction exists under 28 U.S.C. § 1331.

**Background**

Horen began working for the Lucas County Court of Common Pleas in December 1996, as a research law clerk or staff attorney for Judge Charles Wittenberg. In this position, Horen drafted

---

[1] Horen concedes Judge Cook is entitled to summary judgment in her personal capacity, and seeks only to establish Judge Cook is liable in her official capacity. Additionally, Horen has chosen not to pursue a claim on behalf of her daughter. (Doc. 49).

1

proposed opinions and orders that Judge Wittenberg used in deciding cases. Horen was Judge Wittenberg's sole law clerk or staff attorney, as Horen did not recall the exact title of her position:

> At that time I don't know if it was a law clerk or a staff attorney position. They had different terminology for it . . . . [A]lthough we would cross and do work for other judges . . . you were mainly working for one particular judge that you were assigned to or hired by . . . .

Horen described her position:

> I would read motions, read briefs that I had in front of me. I would research the issues that were brought up in the briefs. I would draft an opinion. That was kind of the day in and day out. If there was something I was concerned about, I would discuss it with Judge Wittenberg. I would go up to his office and we would discuss them until we came to a conclusion. Then I would complete the draft and turn it into him.

Throughout her employment, Horen worked on the courthouse's first floor in an office with other judicial law clerks and staff attorneys. Horen would call Judge Wittenberg, and later Judge Cook, directly if she had questions. Horen only reported to the judge for whom she worked.

Horen recalled a few sporadic times when she completed assignments for other judges. This usually occurred when the other judge's staff attorney was not available. According to Horen, the staff attorneys "all covered for one another."

In 2007, Judge Cook was elected to her current position. Horen began working for Judge Cook shortly after she took the bench. To establish continuity, Judge Cook requested that her staff continue to work as they had before her arrival.

Judge Cook testified Horen did not complete work in a timely manner. When Judge Cook confronted Horen, she responded with a contentious email that, Judge Cook stated, was typical of Horen's overall poor attitude during her time with Judge Cook.

Judge Cook stated Horen's work product did not meet her expectations. On one occasion,

Horen failed to recognize mandatory statutory language. Because of her reliance on Horen's work, Judge Cook issued an opinion in contravention of the statute. Judge Cook thereafter granted a motion for reconsideration to correct the error.

In May 2009, Horen requested, and she was granted, two weeks' FMLA leave to care for her daughter after she underwent surgery. After her daughter's surgery, Horen learned she would need additional time off because her daughter's surgery was more extensive than originally expected. Horen received the additional leave time, which continued through August 2, 2009.

During her FMLA leave time, Horen refused to answer emails or file time sheets. Judge Cook filed Horen's time sheets on her behalf.

Horen claims Judge Cook was hostile toward her when she returned to work. After Horen's return, she immediately requested three weeks' vacation time. Judge Cook called Horen to discuss the request. Judge Cook claimed Horen again exhibited an inappropriate attitude during the call.

On August 13, 2009, Judge Cook met with Horen. Horen recalls a rambling, loud, and angry discourse from Judge Cook regarding her dissatisfaction with the work backlog Horen's absence created. Horen claims Judge Cook wished to terminate her after the meeting, but a court administrator persuaded Judge Cook not to because of FMLA concerns.

Judge Cook remembers the meeting differently. Judge Cook stated she tried to address Horen's poor attitude and deficient work product, but Horen resisted her attempts. Instead, Horen became extremely defensive and made accusations against Judge Cook. Horen brought up her FMLA leave, but Judge Cook did not initiate the discussion. Judge Cook responded, stating the meeting did not concern Horen's FMLA leave, but related only to her work product and attitude since her return.

3

After the meeting, Judge Cook placed Horen on a ninety-day probationary period.

On December 1, 2009, Horen told Judge Cook she would need additional leave time because her daughter required another surgery.

On December 2, 2009, Horen attended a staff meeting during which a human resources employee told court personnel they needed to file weekly time sheets, to be signed by the employee's supervisor each Friday. During the meeting, Horen stated she would not be able to obtain Judge Cook's signature because Judge Cook was "never there." Judge Cook learned of Horen's comment, and called other court employees, who confirmed what Horen had said.

Judge Cook met with Horen on December 9, 2009, to confront her regarding the comment. Horen denied making any comment critical of Judge Cook during the meeting. After realizing Horen would not accept responsibility for her actions, Judge Cook decided to terminate her. Judge Cook formally terminated Horen on December 16, 2009.

**Standard of Review**

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must provide the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed.R.Civ.P. 56(e).

After the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there

is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some evidentiary material in support of its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding the motion for summary judgment, the non-moving party's evidence will be accepted as true and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Summary judgment shall be granted if the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

### Discussion

Horen claims Judge Cook terminated her in violation of the FMLA, which requires an employer to reinstate an employee after she takes FMLA leave and prohibits an employer from terminating an employee for exercising her FMLA rights. 29 U.S.C. § 2615(a)(1)-(2).

Judge Cook disputes whether the FMLA applies to provide Horen with any protection in this case. Specifically, Judge Cook argues that she, as an agency employee, does not qualify as an FMLA employer. She also contends that Horen does not qualify as an FMLA employee because Horen falls within the "personal staff" exemption to the general definition of an FMLA employee.

### 1. Judge Cook as an FMLA Employer

Judge Cook first argues she does not qualify as an FMLA employer. I agree.

To establish a cause of action under the FMLA, Horen must show Judge Cook qualified as an FMLA employer. *See Humenny v. Genex Corp.*, 390 F.3d 901, 905 (6th Cir. 2004).

"[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."). The Sixth Circuit has explicitly stated that "the FMLA's text and structure reveals that the statute does not impose individual liability on public agency employers." *Mitchell v. Chapman*, 343 F.3d 811, 829 (6th Cir. 2003). Horen only seeks to pursue her claim against Judge Cook in her official capacity (Doc. 49). Thus, as I stated in a prior opinion dismissing Lucas County as a defendant, Horen must demonstrate that she can maintain a suit against the Lucas County Court of Common Pleas. *Horen v. Lucas County*, 3:11CV1110, (Doc. 33), issued December 14, 2011.

Horen cannot maintain suit against the Lucas County Court of Common Pleas because, in Ohio, a court is not an entity *sui juris*. *State ex rel. Cleveland Mun. Court v. Cleveland City Council*, 34 Ohio St. 2d 120, 121, 296 N.E.2d 544, 546 (1973). A court may not, absent express statutory authority, sue nor be sued in its own right. *Id.*; *see also Malone v. Court of Common Pleas of Cuyahoga County*, 45 Ohio St. 2d 245, 248 (1976); *Phillips v. Eyster*, 2011-Ohio-5427 (CA Ohio) (unpublished). Thus, Judge Cook in her official capacity, and, by extension, the Lucas County Court of Common Pleas, are not FMLA employers.

I reject Horen's argument that Judge Cook's position, as a Common Pleas Judge, independently qualifies as a government agency that may be sued. Horen has failed to cite any authority supporting this position. Additionally, Sixth Circuit case law establishes that a suit against a judge in her official capacity amounts to a suit against the court for which the judge serves. *See Alkire*, *supra*, 330 F.3d at 810 ("the Holmes County Court, as the government entity that employed Judge Irving, [is] the only true defendant[] in this case . . . ."). Because Horen has elected not to

6

pursue a claim against Judge Cook in her personal capacity, and she cannot maintain a suit against the agency for which Judge Cook works, the Lucas County Court of Common Pleas, her claim fails.

### 2. Horen as an FMLA Employee

Judge Cook alternatively argues Horen does not qualify as an FMLA employee. I agree with this contention as well.

The FMLA applies only to "eligible employees." *Humenny*, *supra*, 390 F.3d at 905. "A state government employee, not subject to the civil service laws, is not an 'employee' for Title VII purposes if she works on an elected official's 'personal staff.'" *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 158 (6th Cir. 2004) (quoting 42 U.S.C. § 2000e(f)). This exception precludes "elected official's immediate subordinates or those who are [her] first line advisors[]" from qualifying as FMLA employees. *Id.* (citing *Montgomery v. Brookshire*, 34 F.3d 291, 296 (5th Cir.1994)). Horen does not dispute she served as a government employee not subject to the civil service laws, or that Judge Cook is an elected official. Instead, Horen argues she did not work on Judge Cook's personal staff.

Courts consider the following non-exhaustive list of factors in determining whether an employee qualifies as an elected official's "personal staff":

> (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Birch*, *supra*, 392 F.3d at 158.

In *Birch*, the plaintiff, a probate court magistrate, sued the Cuyahoga County Probate Court and Judge John Donnelly, alleging, *inter alia*, sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). *Birch*, *supra*, 392 F.3d at 155. The Sixth Circuit held that, as a magistrate, the plaintiff fell within the personal staff exemption as a matter of law. *Id*. at 159. The court throughly analyzed the relevant factors leading to this conclusion:

> . . . Birch, like all the other magistrates at the Probate Court, serves at [Judge Donnelly's] pleasure. Second, Birch is personally accountable only to Judge Donnelly, who is responsible for hiring and supervising the magistrates. Third . . . Birch (like all the other Probate Court magistrates) represents both the Probate Court and Judge Donnelly in the eyes of the public. Indeed, Birch admitted as much in a letter to Judge Donnelly prior to the commencement of this litigation . . . . Fourth, Judge Donnelly exercises a considerable amount of control over Birch's position because he has the power to hire, fire, and supervise her performance; controls Birch's pay raises; relies on Birch to perform work that he is not available to do; and relies on Birch's recommendations in carrying out court business. Fifth, the record indicates that Birch reports directly to Judge Donnelly; she is his immediate subordinate.
>
> As to the sixth factor, the evidence suggests that Birch has an intimate working relationship with Judge Donnelly because Birch is only one of ten magistrate judges at the Probate Court, and Judge Donnelly depends on Birch to complete the work of the court. Birch contends that the relationship is not intimate because Judge Donnelly has provided very little by way of hands-on or day-to-day interaction with Birch. Her contention, however, is supported only by her vague, conclusory denial of regular contact with Judge Donnelly.
>
> Thus, Birch's relationship with Judge Donnelly is intimate in the sense that their respective duties are heavily interdependent. Their relationship does not lose its intimate status merely because Birch is afforded a necessary degree of autonomy in her work, such that she and Judge Donnelly need not interact on a daily basis. Based on the totality of the factors, we hold that Birch is exempt from Title VII's coverage as a member of Judge Donnelly's personal staff.

*Birch*, *surpa*, 392 F.3d at 159.

In *Graves v. Wayne County Third Circuit Court*, 2008 WL 3318726 (E.D. Mich.), the plaintiff, Karen Graves, served as a law clerk to Judge Wendy Baxter. After Judge Baxter hired

8

Graves, Graves became pregnant and missed work due to medical complications. Judge Baxter terminated Graves, who sued under Title VII. The court granted the defendant's motion to dismiss, holding that the law clerk, like the magistrate in *Birch*, *supra*, was part of Judge Baxter's personal staff and did not qualify as an employee under Title VII. *Id*. at *3.

A review of the *Birch* factors makes clear that Horen, like the magistrate in *Birch* and the law clerk in *Graves*, was a member of Judge Cook's personal staff. I discuss each of the *Birch* factors in turn.

(a) Judge Cook's Powers of Appointment and Removal over Horen

The evidence presented shows Judge Cook retained the power to hire and terminate the staff attorney who worked for her. On hiring, the court provided an employment manual to all staff attorneys and law clerks. The manual explicitly stated that "staff attorneys[] and judicial law clerks are personal, at-will employees of the individual Judge for whom they work." The employment manual also directed a staff attorney or law clerk to submit her resignation directly to the judge for whom she worked. The description of the staff attorney position stated staff attorneys report to their assigned judge, and are considered exempt professionals under the Fair Labor Standards Act (FLSA).[2] Thus, it appears the Lucas County Common Pleas staff attorneys and law clerks serve at the pleasure of the judge for whom they work.

Horen argues there is no established authority that Judge Cook properly terminated her. Thus, she argues, the actual fact Judge Cook terminated her cannot show she did so with proper

---

[2] "The FMLA expressly incorporates into its provisions the Fair Labor Standards Act's . . . definition of 'employee.'" *Chapman*, *supra*, 343 F.3d at 826.

authority. Because the court's employment manual expressly rebuts this contention by stating that staff attorneys are personal, at-will employees of the judge for whom they work, I reject this argument.

Horen also argues the procedure by which she was hired shows Judge Cook did not retain authority over her appointment and removal. Judge Cook acknowledged that, when she took the bench, the court assigned Horen to serve as her staff attorney. Horen did not apply for the position and Judge Cook did not interview Horen. However, as Judge Cook also testified, she wished to retain the procedures and practices used by the prior judge. Taken in context with the language in the employment manual, and Judge Cook's wish to maintain conformity with her predecessor, her failure to exercise her right to reject Horen and hire an outsider as her first staff attorney did not show she lacked the authority to do so.

(b) Horen's Personal Accountability to Judge Cook

Judge Cook presented strong, undisputed evidence that Horen was personally accountable to her. The court provided Horen with a position description. It listed her job purpose as follows:

> Works as a personal and confidential employee for an individual Judge. Performs legal research and provides writing, consulting, and editing assistance to the Judge in drafting judicial opinions. Analyzes legal issues at the direction of the Judge and tracks motions. Stays up to date on the latest case and statutory laws and keeps the Judge informed.

The court's employment manual also stated, "the relationship between a Judge and a . . . staff attorney[] or judicial law clerk requires absolute confidence in the confidentiality of information. This expectation of confidentiality extends beyond the term of employment."

Additionally, Horen reported directly to Judge Cook. When Judge Cook was not pleased with Horen's work or attitude, Judge Cook scheduled a personal meeting with Horen. Judge Cook

personally disciplined Horen and it was her ultimate decision to terminate Horen's employment. This demonstrates Horen's personal, direct accountability to Judge Cook.

Horen acknowledges her personal accountability to Judge Cook, but argues that she also performed work for other judges and reported her hours to human resources. However, as the court stated in *Birch*, *supra*, 392 F.3d at 159, an employee need not work exclusively with one elected official to qualify under the exemption. To the contrary, in that case, Birch worked for several judges, but ultimately remained personally accountable to Judge Donnelly. Likewise, although Horen may have "covered for" other staff attorneys in their absences, she ultimately remained accountable to Judge Cook.

(c) Horen's Representation of Judge Cook in the Eyes of the Public

A staff attorney, assigned to a specific Common Pleas judge, holds a position that represents the judge in the eyes of the public. As the court stated in *Graves*, 2008 WL 3318726 at *3, a law clerk represents her judge in the "eyes of the public, as any attorney or person interacting with [the clerk] would know that she was working directly for [the Judge]." The law clerk position in that case and the staff attorney position in this case appear to differ only by title. *See id*. at *1-3. As described by the evidence presented, Horen held a position that an outsider would recognize represented Judge Cook in eyes of the public.

(d) Judge Cook's Control over Horen's Position

Horen acknowledges that "Judge Cook had control of Horen's workload and time, to the extent she desired to exercise that control." Judge Cook relied on Horen to perform work she could not, and her job primarily included drafting proposed opinions and orders for Judge Cook's

approval. Judge Cook was free to accept or reject any or all of Horen's work. This factor, therefore, heavily favors finding Horen fell within the exemption.

(e) The level of Horen's position within the Court's Chain of Command

As a staff attorney, Horen served as Judge Cook's "immediate subordinate" and her "first line advisor[]." *Birch*, *supra*, 392 F.3d at 158. The record indicates she reported directly to Judge Cook. Horen argues that this factor favors her because she did not have a position in the "chain of command." Horen essentially argues she was not Judge Cook's personal staff because she did not enjoy Judge Cook's power in her absence. However, the statute and case law do not contain such a requirement, and I reject this limited definition of the statutory phrase "personal staff." *See id*.

(f) The Actual Intimacy of the Working Relationship between the Judge Cook and Horen

Although it appears Judge Cook and Horen often did not get along well personally, the record establishes they shared an intimate working relationship within the meaning of the statute. First, Judge Cook heavily relied on Horen's work. In fact, on one occasion, Judge Cook adopted an incorrect opinion that Horen wrote. Additionally, Horen necessarily had all information related to each case, which included confidential information not revealed to the public. The court employment manual summarized the position as one that required a judge be able to retain "absolute confidence" in the staff attorney. The level of a staff attorney's involvement in court affairs, coupled with the high degree of trust with intra-court confidentiality and decision making, show Horen and Judge Cook shared an intimate working relationship.

## Conclusion

Defendant Judge Cook has established that she does not qualify as an FMLA employer and that plaintiff Horen does not qualify as an FMLA employee.

For the foregoing reasons, it is hereby

ORDERED THAT:

Judge Stacy Cook's motion for summary judgment (Doc. 47) be, and the same hereby is granted.

So ordered.

s/ James G. Carr<br>Sr. United States District Judge